IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

OSCAR RESTREPO and MARIA
MARTINEZ, as Next Friends of JANE
DOE, an Incapacitated Person,

    *Plaintiffs,*    CIVIL ACTION NO. 3:24-cv-01276

v.

DALLAS AREA RAPID TRANSIT;
MV TRANSPORTATION, INC.; and
SAMSON ASSEFA LEMMA,

    *Defendants.*

**<u>DEFENDANT MV TRANSPORTION, INC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND JOINDER IN DEFENDANT DART'S MOTION TO DISMISS</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

    COMES NOW MV Transportation, Inc. (MVT), Defendant in the above-caption and numbered cause, and files this Reply in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Joinder in Defendant DART'S Motion to Dismiss (ECF 41) responding to arguments submitted by Plaintiffs in their Response (ECF 42-44):

a) **Because sexual assault and/or the failure to prevent same are not disability-based discrimination in and of themselves, Plaintiffs' ADA/RA disability-based discrimination claims submitted fail as a matter of law.**

    In their Response, Plaintiffs continue to insist that any act of sexual assault against disabled individuals is *per se* disability-based discrimination based on the mere fact that the victim is disabled despite MVT's citation to district courts in the Fifth Circuit uniformly holding otherwise (including a case brought by the same law firm against the same defendants in this District). (ECF 43 p. 9; 11-14). Plaintiffs make this argument because they must. That's what Plaintiffs pled, and why MVT (and DART) largely moved to dismiss the disability-based ADA/RA claims against it.

In support of this argument, Plaintiffs provide the Court with a citation to a single case from the Eastern District of Louisiana—without any legal or factual analysis to the allegations within their FAC whatsoever—as if the facts and claims underpinning that case magically apply to and otherwise salvage their claims under the *Iqbal/Twombly* plausibly standard. (*id.* at pp. 11-14) (citing to *J.I. through Interiano v. Jeferson Parish School Board*, 2023 WL 8563034 (E.D. La. Dec. 11, 2023).[1] They are wrong on both counts.

The facts underpinning *J.I.* are a far cry from those presented here. Not only that, the *J.I.* plaintiffs relied upon *different* theories of liability under the ADA/RA than Plaintiffs do here. As such, the Court should reject the persuasiveness of the *J.I.*, and adopt the uniform reasoning of districts courts in the Fifth Circuit, which all rejected Plaintiffs' notion that sexual assault and/or the failure to prevent it are acts of disability-based discrimination in and of themselves.

Contrary to the allegations and theory of liability Plaintiffs submitted within their FAC, the plaintiffs in *J.I.* based their ADA/RA claims on disparate treatment discrimination theory rather than claiming that sexual assault against a disabled passenger is *per se* disability-based discrimination under the ADA/RA. *J.I.*, 2023 WL 8563034 at *1. In support of their disparate treatment claim, the *J.I.* plaintiffs alleged facts demonstrating same, *i.e.*, that their intellectually disabled child had been sexually assaulted "countless" times between 2018 through 2020 by a school bus aide while the minor rode the bus to school *along with* his non-disabled classmates. *Id.* The *J.I.* plaintiffs also alleged that the school bus aide singled-out the disabled minor for sexual abuse—rather than non-disabled students the aide who were on the bus as well—because of J.I.'s disability. *Id.* The *J.I.* plaintiffs then provided specific allegations of disparate treatment including

---

[1] Plaintiffs also summarily cite to a single Seventh Circuit district court case, *Doe v. Board of Education of City of Chicago*, 611 F. Supp. 3d 516 (N.D. Ill.—Eastern Div. 2020), in their Response. Upon review, this case did not hold and/or otherwise provide support Plaintiffs' notion that sexual assault and the failure to prevent it are *per se* acts of disability-based discrimination when the victim is disabled.

1

but not limited to alleging that the bus aide purposefully isolated the disabled-minor by sitting him in the back of the bus away from other students "so that the aid could perform sexual acts on J.I. and so that J.I. could reciprocate those acts." (ECF 44, p. 14, ¶¶ 17-18).

After reiterating these concerning facts, the *J.I.* district court began its analysis by citing to caselaw affirming that disparate treatment claims are cognizable under the ADA/RA to show disability-based discrimination. *J.I.*, 2023 WL 8563034 at *2. And unlike Plaintiffs' Response and the allegations submitted within their FAC, the *J.I.* plaintiffs specifically denied that their complaint "*assert[ed] [that] sexual abuse of J.I. <u>itself</u> constitutes discrimination*" then, on that basis, argued that the *Woods* line of cases (relied upon by MVT and DART here) were therefore unpersuasive and distinguishable from their ADA/RA claim before the district court. *Id.* at *3.

The problem with Plaintiffs' reliance on *J.I.* is that the fact that Plaintiffs neither alleged a disparate treatment ADA/RA claim within their FAC nor could they. As Plaintiffs allege within the FAC and admit in their briefing, Defendant Lemma was left alone and unsupervised on the DART paratransit bus when he allegedly groomed Jane Doe at a Wal-Mart one day then abused her at a McDonald's parking lot on another. (ECF 21 §§ I at ¶¶ 3-4; 7; 20; 32; IV at ¶¶ 4; 6); (ECF 36, p. 11) (stating that Jane Doe was "isolated in the paratransit van under Defendant Lemma's control"). And unlike the *J.I.* matter, Plaintiffs do not allege that similarly situated passengers were on the bus too—or any other passengers for that matter—yet Defendant Lemma singled her out for abuse because of her disability.[2]

In order to allege a disparate treatment claim, Plaintiffs must plausibly allege that Jane Doe was being treated less favorably than non-disabled individuals because of her disability. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003); *Crawford v. U.S. Dept. of Homeland Sec.*,

---

[2] Nor could they. By law, paratransit services are reserved for persons with disabilities and required to be origin-to-destination services. *See* 49 C.F.R. 37.123; 49 C.F.R. 37.129(a).

1080253v.1

245 Fed. Appx. 369, 380 (5th Cir. 2007); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir. 2000). Accepting as true Plaintiffs' well-pleaded factual allegations as the Court must at this stage, Plaintiffs' own allegations foreclose any disparate treatment based ADA/RA claim. There are simply no allegations within the FAC that Lemma preyed on Jane Doe relative to other non-disabled passengers because of Doe's disability.[3] As Plaintiffs admit, there were no other passengers, let alone non-disabled ones, there.

Plaintiffs also make passing reference to other possible ADA/RA claims within their FAC based on (a) deliberate indifference theory and/or (b) "common sense." (ECF 43, pp. 13-15). Of course, "common sense" is neither an ADA/RA claim nor a legal substitute for binding precedent and statutory constraints. Regarding any reliance on ADA/RA deliberate indifference theory, Plaintiffs did <u>not</u> plead a disability-based discrimination claim against MVT based on deliberate indifference theory, and, even if they did, their allegations within their FAC fall woefully short of stating claim for same. *Est. of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 995-96 (5th Cir. 2014) (extending Title IX's deliberate indifference liability to ADA/RA claims).

Notwithstanding Plaintiffs' failure to plead this alternative liability theory, any deliberate indifference ADA/RA claim is rendered implausible for an entirely separate reason. As stated by MVT's Motion, Plaintiffs' FAC exclusively seeks compensatory damages against MVT; yet, under the ADA and RA, only acts of intentional discrimination entitle them to damages. (ECF 41, pp. 12-13).[4] In determining what conduct rises to the level of intentional discrimination under the ADA/RA, the Fifth Circuit has repeatedly held that the ADA/RA requires "something more than 'deliberate indifference.'" *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d

---

[3] Instead, Plaintiffs submit conclusory allegations that ask the Court to make an inferential leap that Defendant Lemma's conduct was motivated by Jane Doe's disability, which are barred from consideration at the Rule 12 stage under the *Iqbal/Twombly* plausibly standard. (*See* ECF 21, p. 7, ¶ 8; p. 12, ¶ 24; p. 16 ¶ 2; p. 18, ¶ 5).

[4] By failing to argue otherwise in their Response, Plaintiffs concede that their FAC only seeks compensatory damages against MVT as well as the limited availability of compensatory damages under the ADA/RA. (*See* ECF 43).

3

1080253v.1

565, 575 (5th Cir. 2018); *J.W. v. Paley*, 81 F.4th 440, 450–51 (5th Cir. 2023). Even if Plaintiffs pled or could plead a deliberate indifference ADA/RA claim against MVT, such claim is precluded by the compensatory damages they seek.

Should the Court reject Plaintiffs' alternative theories submitted in their Response, what's left is Plaintiffs' disability-based discrimination claim against MVT based entirely on an employee's alleged sexual assault and MVT's alleged failure to prevent same, which they originally pled within their Complaint, pled again within their FAC, and their counsel pled against the same Defendants in prior lawsuit previously dismissed on dispositive motion. Because every Fifth Circuit district court reviewing similar allegations has held that sexual assault and the failure to prevent it are <u>not</u> acts of disability-based discrimination in and of themselves, the Court should Court dismiss with prejudice Plaintiffs' ADA and RA claims against MVT pursuant to Fed. R. Civ. P. 12(b)(6). (*See* ECF 41, p. 10) (incorporating by reference cases cited within ECF 26, pp. 15-16); *see also Ituah by McKay v. Austin State Hosp.,* 2021 WL 9816615, at \*\* 9-10 (W.D. Tex. Nov. 18, 2021), *report and recommendation adopted*, 2022 WL 17732330 (W.D. Tex. Mar. 21, 2022), *aff'd*, 2023 WL 3222848 (5th Cir. May 3, 2023).

**b) Plaintiffs' ADA/RA failure to accommodate claims should be dismissed too.**

As they must, Plaintiffs do not dispute that their FAC fails to allege that Plaintiffs made a request for accommodation to MVT in "direct and specific terms." (ECF 43, pp. 15-16). Nor do Plaintiffs provide citation to authority disputing Defendant's caselaw prohibiting the imputation of notice between separate entities. (*Id.*). In essence, by failing to dispute the deficiencies of their FAC and case law prohibiting the imputation of notice between separate entities, Plaintiffs concede that their reasonable accommodation claim against MVT should be dismissed for failure to state claim so they instead request leave to amend their FAC to allege notice. (*Id.* at p. 16).

For three reasons, the Court should decline Plaintiffs' request for leave to amend to reassert an ADA/RA accommodation claim. First, Plaintiffs provide no authority which would allow the imputation Plaintiff Martinez's "direct and specific term" notice and communications to DART onto MVT based on speculative contractual obligations and/or indirect communications by and through intermediary, *i.e.*, DART. *See, e.g.*, *Lee v. Dallas Cnty.*, 2020 WL 7388602, at *8 (N.D. Tex. Dec. 16, 2020) (refusing to impute notice of the plaintiff's request for modification from one entity to another without allegations that the plaintiff made a request for modification to the latter in direct and specific terms).

And even if Plaintiffs submitted plausible allegations showing that they submitted a request for accommodation to MVT in direct and specific terms, Plaintiffs' reasonable modification claim is rendered implausible for two additional reasons: (1) Plaintiffs' FAC fails to plausibly allege noticing any actionable disability-based discrimination by Defendant Lemma against Jane Doe sufficient to trigger any duty on behalf of MVT (or DART) to implement a request for modification and (2) Plaintiff Martinez's request for modification, *i.e.,* request that Defendant Lemma would no longer drive Jane Doe, is not an actionable request for modification under Title II of the ADA or RA, as it constitutes a particularized demand rather than a failure to implement an FTA-approved plan. (ECF 26, pp. 12-14; 16-17; ECF 39, p. 2) (incorporated hereto by reference). For these reasons and those set forth in MVT's Motion, the Court should dismiss Plaintiffs' ADA/RA reasonable request for modification claims against MVT with prejudice.

c) **Because Plaintiffs' FAC only seeks compensatory damages, the Court should decline Plaintiffs leave to amend their FAC to assert a Title III claim against MVT.**

Compensatory damages sought by a private litigant are non-recoverable under Title III of the ADA as a matter of law. *See Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 Fed. Appx. 180, 183 (5th Cir. 2015); *see also Morrison v. Unum Life Ins. Co. of America*, 2008 WL 4224807,

5

*3 (W.D. La. Sept. 10, 2008) (collecting cases). Because the only relief Plaintiffs seek against MVT is unavailable under Title III of the ADA, amending their FAC to assert a Title III claim against MVT would be futile. (ECF 21, pp. 24-25); *Spann v. JPMorgan Chase Bank, N.A.*, 2022 WL 2177438, at *8 (E.D. La. June 16, 2022) (dismissing Title III claims due to same). For this reason and the reasons MVT asserted why the FAC fails to allege a disability-based discrimination claim against it, the Court should reject Plaintiffs' request to amend to assert same.

### d) Plaintiffs' Section 1983 claims against MVT are groundless and should be dismissed with prejudice.

In response to MVT's arguments concerning the implausibility of Plaintiffs' *Monell* claim, Plaintiffs concede that their FAC lacks factual allegations sufficient to state a claim. Specifically, Plaintiffs fail to respond to MVT's assertion that they failed to allege any MVT policymaker with actual or constructive knowledge of the constitutional violation(s) supporting their Section 1983 claim, so they instead request leave to amend to address this critical element. (ECF 43, p. 20). The Court should grant MVT's Motion and dismiss Plaintiffs' Section 1983 claims against MVT on this basis alone.

Further, because any amendment would be futile, the Court should also dismiss Plaintiffs' Section 1983 claims against MVT with prejudice. Regarding MVT's argument that there no allegations plausibly identifying an <u>MVT</u> official policy or custom within the FAC, Plaintiffs provide the Court with nothing more than labels, conclusions, and conjecture, which should be disregarded under *Iqbal/Twombly* standard. First, Plaintiffs argue that contractual provisions that MVT had with DART somehow constitute MVT's official policy without citation to authority or reference to any well-pleaded facts within their FAC concerning same. (*Id.* p. 19). Notwithstanding the absurdity of this argument based on Plaintiffs' sheer speculation and *ipse dixit*, Plaintiffs assert that these unspecified contractual provisions limited MVT's response to

6

Plaintiff's Martinez's report of Defendant Lemma's alleged grooming behavior to DART, which MVT had no "direct or specific term" notice of *supra*, such that these unidentified/inapplicable contractual provision(s) were the moving force behind Defendant Lemma's sexual assault of Doe. Because Plaintiffs' allegations submitted within their FAC would require multiple inferential leaps of faith to conclude that Defendant Lemma sexually assaulted Jane Doe due to mere contractual provisions, Plaintiffs have not alleged facts showing a direct causal link between the MVT policy on the one hand and the constitutional violation on the other.

In the alternative, Plaintiffs argue that MVT's written policy and instructions to its drivers do not adequately address the prevention of sexual assault of disabled passengers such that they plausibly allege a *Monell* failure to train claim. (*Id.*). This claim stems from the seminal Supreme Court case, *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), which first recognized and delineated the contours of a Section 1983 failure to train claim against a municipality.

Plaintiffs' reliance on a failure to train *Monell* claim falls flat for three reasons. First, Plaintiffs fail to allege, much less identify, any particular deficiency in MVT's policies, training or instructions to its drivers. *Edwards v. City of Balch Springs, Texas*, 70 F.4th 302, 312 (5th Cir. 2023) (stating that a failure to train claim requires a plaintiff to "allege with specificity how a particular program is defective"); *see also See Hutcheson v. Dallas Cnty., Texas*, 994 F.3d 477, 483 (5th Cir. 2021) (stating that accepting speculative and conclusory allegations of a municipality's failure to train "would result in the imposition of [prohibited] respondeat superior liability on municipalities").

Second, the allegations in the FAC concerning deliberate indifference are wholly conclusory: the FAC merely alleges that "MV Transportation's deliberate indifference, acts, and omissions were a proximate cause of Jane Doe's injuries and damages." And as discussed in MVT's Motion, Plaintiffs pled a *Monell* pattern or practice claim in conclusory fashion without

7

meaningful factual content sufficient to show deliberate indifference. In their FAC, besides alleging *three*[5] sexual assaults allegedly occurred over a ten-year span, Plaintiffs failed to sufficiently allege: any particular training or custom deficiency giving rise to those prior sexual assaults, any facts connecting those alleged assaults to Defendant Lemma's alleged sexual assault of Doe, that what happened to Doe was a "highly predictable consequence of a *particular* failure to train" or custom, and/or any actual or constructive notice of same by MVT policymakers. *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 397 (5th Cir. 2017) (emphasis added); *see also Armstrong v. Ashley*, 60 F.4th 262, 276-77 (5th Cir. 2023). Notwithstanding these pleading deficiencies, Plaintiffs' continued reliance on a pattern of prior sexual assaults to show MVT's deliberate indifference also fails the high bar of pleading numerosity and frequency. *Id.*; *see also* (ECF 41 p. 11).

Third, Plaintiffs cannot plausibly allege how MVT's alleged training or policy deficiencies caused the violation of Ms. Doe's constitutional rights. Indeed, the notion that, MVT caused Defendant Lemma's sexual assault of Doe because it failed to apply additional or different policies/training in order to tell its personnel to recognize signs of grooming and/or abstain from committing sexual assault on disabled passengers, is unavailing. Specific or extensive training or policies are unnecessary for anyone to know that sexually assaulting disabled passengers is highly inappropriate and criminal behavior. Consequently, the facts underpinning Plaintiffs' FAC do not plausibly allege causation or a *Monell* claim in the *Canton*-sense where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of [MVT] can reasonably be said to have been deliberately indifferent to the need." *Compare Harris,* 489 U.S. at 390, n. 10 *with Connick v.*

---

[5] Plaintiffs' FAC originally alleged <u>three</u> prior sexual assaults. However, the Court should be disregard one instance via judicial notice at the Rule 12 stage, as it was dismissed on summary judgment. (ECF 41, p. 16, n. 2). Because Plaintiffs failed to respond to this argument, they have abandoned allegations that this prior sexual assault occurred.

8

*Thompson*, 563 U.S. 51, 63 (2011); *see also Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996). Indeed, courts regularly dismiss *Monell* claims against municipalities based on lack of deliberate indifference and causation when "rogue employees engage in blatant wrongdoing" including sexual assault. *Gambrel v. Knox Cnty., Kentucky,* 25 F.4th 391, 410 (6th Cir. 2022) (collecting cases); *see also Kobrick v. Stevens*, 763 F. App'x 216, 220-21 (3d Cir. 2019) (dismissing *Monell* claims based on allegations that municipality's staff failed to recognize signs of "grooming" prior to perpetrator's sexual assault of a minor because the inappropriateness of same was self-evident and the entity lacked knowledge of sexual abuse).

For these reasons and those set forth in its Motion, Plaintiffs' Section 1983 claims against MVT should be dismissed with prejudice.

### e) By failing to respond to various dismissal arguments, Plaintiffs have abandoned many of their claims against MVT.

Because Plaintiffs failed to respond to MVT's arguments that: as a private entity, it is not subject to suit under Title II of the ADA (ECF 42, p. 4-5); punitive damages are non-recoverable for all claims Plaintiffs asserted against MVT under the ADA/RA and Section 1983 (*id*. at pp. 9; 12); emotional distress damages are non-recoverable under the ADA/RA pursuant to *Cummings v. Premier Rehab Keller P.L.L.C.*, 596 U.S. 212 (2022) (*id*. at pp. 8-9); and Plaintiffs' Section 1983 failure to supervise and/or vet claim is implausible (*id*. at pp. 11-12), the Court should deem those claims against MVT as abandoned and dismiss them with prejudice. *See Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (concluding plaintiff's failure to respond to defendant's argument in a motion to dismiss constituted abandonment).

In regards to emotional distress damages and *Cummings*, Plaintiffs only dispute that the recovery of out-of-pocket expenses treating mental health conditions is also barred under the ADA/RA and *Cummings* opinion. (*Compare* ECF 41, p. 9 *with* ECF 43, pp. 16-17). In their

9

Response, Plaintiffs assert that *Cummings* did not address out-of-pocket expenses treating mental health conditions, and, therefore, these out-of-pocket expenses should be available to them pursuant to a Texas Supreme Court case addressing Texas law. Yet, state law is irrelevant to remedies available to plaintiffs under federal antidiscrimination statutes. As stated within MVT's Motion, courts have evaluated this issue and decided that out-of-expenses treating mental health conditions are also barred under *Cummings* opinion. (ECF 41, p. 9). Indeed, Chief District Judge Godbey recently evaluated *Cummings* and agreed with MVT's interpretation of same. *See McGowan v. S. Methodist Univ.*, 715 F. Supp. 3d 937, 954-56 (N.D. Tex. 2024). The Court should dismiss Plaintiffs' ADA/RA claims insofar as their damages relate to emotional distress and out-of-pocket expenses related to or treating emotional distress.

WHEREFORE, for these reasons as well as those originally set forth in MVT's Motion, MVT requests that this Court grant its Motion to Dismiss. order that Plaintiffs' claims against MVT be dismissed with prejudice, and grant such other and further relief to which MVT is entitled, at law and in equity.

Respectfully submitted,

**COOPER & SCULLY, PC**

*/s/ John C. Faubion*
**JOHN A. SCULLY** – attorney in charge
Texas Bar No. 17936500
John.Scully@cooperscully.com
**JOHN C. FAUBION**
Texas Bar No. 24089013
John.Faubion@cooperscully.com
900 Jackson, Suite 100
Dallas, Texas 75202
(214) 712-9500
(214) 712-9540 (fax)

**ATTORNEYS FOR DEFENDANT
MV TRANSPORTATION, INC.**

10

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of November, 2024, a true and correct copy of the foregoing document was served on all counsel of record by electronic court filing:

/s/ *John C. Faubion*
**JOHN C. FAUBION**

1080253v.1